# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| WESLEY UHRHAN and SHARON UHRHAN et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:17-cv-02720-JAR |
| B&B CARGO, INC. et al., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Total Quality Logistics's (hereinafter, "TQL") motions to dismiss Count III of Plaintiffs Wesley and Sharon Uhrhan's second amended complaint, Count IV of Plaintiff Glen Paasch's first amended complaint, and Count III of Plaintiff Justine Thompson's first amended complaint. (Doc. Nos. 131, 149). Both motions request that the Plaintiffs' negligent brokering claims—also sometimes referred to as "negligent hiring of an independent contractor" or "negligent hiring" claims—be dismissed because they are preempted under the Federal Aviation Administrative Authorization Act (hereinafter, "FAAAA"), 49 U.S.C. § 14501(c)(1). The motions are fully briefed and ready for disposition. Because the Parties' briefing on both motions is nearly identical, the Court will deliver its judgment on both motions in this Order. For the reasons below, the Court will deny TQL's motions.

### I.  Background

This case is a consolidation of three actions, all arising from a multiple-car accident that occurred on July 23, 2017. Defendant Gurjit Singh was operating a tractor-trailer on Interstate 44 carrying a load allegedly brokered by TQL when he crossed the median into oncoming traffic,

causing multiple collisions. Plaintiff Paasch and Plaintiff Thompson both filed lawsuits seeking damages for the injuries they suffered from the crash. *See Paasch v. B&B Cargo, Inc. et al.*, 4:19-cv-02551-JAR; *Thompson v. B&B Cargo, Inc. et al*, 4:18-cv-02055-JAR. Plaintiffs Wesley and Sharon Uhrhan filed this lawsuit seeking damages for the wrongful death of their son, Eric Uhrhan. The Court granted TQL's motion to consolidate the cases. (Doc. No. 54). All four Plaintiffs have brought Missouri common law claims of negligent brokering against TQL for brokering the load to Defendant Singh and Defendant B&B Cargo, Inc. (which owned and operated the truck Defendant Singh was driving).

## II.     Legal Standard

When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). A dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a [party] includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). The issue on a motion to dismiss is not whether the party will ultimately prevail, but whether it is entitled to present evidence in support of its claim. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1976). However, to avoid dismissal under Rule 12(b)(6), "the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (internal citation omitted).

A defendant may raise the affirmative defense of preemption in a motion to dismiss. *See Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 835 (E.D. Mo. 2015). As the party raising the affirmative defense of federal preemption, TQL bears the burden of proof that Plaintiffs' claims

are preempted. *Hughs v. Union Pac. R.R. Co.*, No. 5:15-06079-CV-RK, 2017 WL 1380480, at *1 (W.D. Mo. Apr. 14, 2017).

**III.    Discussion**

**A.  Federal Preemption**

TQL moves to dismiss Plaintiffs' Missouri common law negligent brokering claims because they are expressly preempted by the FAAAA. "The preemption doctrine derives from the Constitution's supremacy clause, which states that laws of the United States made pursuant to the Constitution are the 'supreme Law of the Land.'" *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 886 (8th Cir. 2005) (quoting U.S. CONST. ART. VI, cl. 2). A state law is expressly preempted "when a federal law explicitly prohibits state regulation in a particular field." *Mo. Brd. of Examiners v. Hearing Help Express, Inc.*, 447 F.3d 1033, 1035 (8th Cir. 2006).

The FAAAA was enacted by Congress to preempt state trucking regulations in order to avoid "a patchwork of state service-determining laws, rules, and regulations" that could have an economic burden on the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013) (quoting *Rowe v. N.W. Transp. Ass'n*, 552 U.S. 364, 373 (2008)). The relevant portion of the FAAA provides that:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

Plaintiffs assert three arguments as to why their claims are not preempted. First, Plaintiffs argue that a negligent hiring claim is a personal injury cause of action under common law and, as such, cannot be understood under the statute as a "law, regulation, or other provision" because it was not enacted by the Missouri legislature. Second, Plaintiffs argue that to the extent a negligent

3

brokering claim is a law, regulation, or other provision under the statute that it does not "relate[] to a price, route, or service of any . . . broker . . . with respect to the transportation of property." Finally, Plaintiffs argue that even if a negligent brokering claim was related to the price, route, or services of a broker, it would be saved from preemption because it falls under the statute's safety regulation exception. The safety regulation exception is captured in § 14501(c)(2) of the FAAAA and provides the following limitation on the FAAAA's preemptive scope:

> Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2).

The Court notes that, "[a]s of yet, neither the Supreme Court nor the circuit courts have addressed the specific issue whether the FAAAA preemption clauses encompass negligence or negligent-hiring claims in personal injury suits against brokers. The district courts that have confronted this question are split on both outcome and rationale." *Lopez v. Amazon Logistics, Inc.*, No. 3:19-CV-2424-N, 2020 WL 2065624, at *4 (N.D. Tex. Apr. 28, 2020); *see also Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *3-5 (W.D. Tex. Jan. 27, 2020) (describing the development of "two diverging lines of cases," a line of preemption and a line of no preemption); *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1295 (W.D. Okl. 2019) (finding that "[f]ederal district courts are sharply divided" as to whether personal injury claims alleging negligence by brokers in selecting motor carriers are preempted by the FAAAA). The Parties' briefing on this issue reflects the severity of the split, with each being able to find ample caselaw in support of their position. The Court has considered the arguments of the Parties and, for the

4

following reasons, ultimately finds that the most persuasive line of cases has found that negligent brokering claims are not preempted by the FAAAA.

### i. A Negligent Brokering Claim Is a Provision Having the Force and Effect of Law

Plaintiffs first argue that that the common law claim of negligent brokering cannot be understood as a state-enforced "law, regulation, or other provision" under the statute. However, "[t]here is no question that a common law negligence claim embodies a state law that may be preempted [by the FAAAA] under proper circumstances." *Loyd*, 416 F. Supp. 3d at 1295 (citing *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014)). As the Supreme Court has explained in evaluating identical language found in the Airline Deregulation Act of 1978 (hereinafter, "ADA"), "It is routine to call common-law rules 'provisions.' And a common-law rule clearly has 'the force and effect of law.'" *Ginsberg*, 572 U.S. at 282 (citations omitted). Thus, as a threshold matter, the Court concludes that Missouri's common law negligent brokering claim is a state enforced provision that can be preempted under the FAAAA.

### ii. A Negligent Brokering Claim Relates To the Service of a Broker

Plaintiffs next argue that their claims are not preempted because the tort of negligent brokering does not "relate[] to a price, route, or service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(2). The Supreme Court has instructed that "[t]he phrase 'related to' [in the FAAAA] embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City Used Cars, Inc.*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370). Although the Supreme Court has found that the words "related to" evince a broad preemptive scope, it has also cautioned that "the breadth of the words . . . does not mean the sky is the limit." *Id.* As a result, the FAAAA "does

5

not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.* (quoting *Rowe*, 552 U.S. at 375).

Plaintiffs argue that a negligent brokering claim does not relate to the services of a broker under the statute because such a claim only requires a broker to act reasonably in making its hiring decisions. Plaintiffs contend that such claims impact all entities doing business in Missouri and are not directly aimed or targeted at regulating the trucking industry. Because no specific regulations are mandated in order to comply with the general duty of care, Plaintiffs argue, the FAAAA's main goal—to ensure that states do not create a "patchwork" of intrastate trucking laws—is not implicated. Any indirect impact on a broker's services as a result of enforcing the generally applicable common-law duty of care in hiring decisions is, thus, too "tenuous, remote, or peripheral" to be preempted. (Doc. No. 137 at 10-11; Doc. No. 144 at 8; Doc. No. 155 at 8).

This line of reasoning has been followed by several district courts. *See, e.g.*, *Gilley v. C.H. Robinson Worldwide, Inc.*, No. CV 1:18-00536, 2019 WL 1410902, at *5 (S.D.W. Va. Mar. 28, 2019) ("In the present case, plaintiffs' negligent selection claim stems from a personal-injury, wrongful-death action, and the court finds that this claim does not 'relate to' [] broker services. It affects broker services in 'too tenuous, remote, or peripheral manner,' to fall within the purview of the statutory preemption provision."); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 770 (N.D. Iowa 2019) (holding that a negligent brokering claim is better understood as a law related to "safety" rather than a law related to "service," based on Eighth Circuit precedent interpreting identical language in the ADA); *Nyswaner v. C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892, 896 (D. Ariz. 2019) ("Because this negligent hiring claim is a 'generally applicable state law that does not 'otherwise regulate prices, routes or services,' the Court cannot conclude that it would have a 'significant impact' on [the broker's services]."); *Mann v. C. H. Robinson Worldwide, Inc.*, No.

6

7:16-CV-00102, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017) ("[A] negligent hiring claim as an avenue for imposing liability for an accident does not have anything more than a 'tenuous, remote, or peripheral' connection to the 'price, route, or service' of a broker.").

In response, TQL argues that negligent brokering claims do, in fact, have more than a tenuous impact on a broker's services.  TQL asserts that negligent brokering claims—unlike straightforward negligence claims—target the brokering process as a whole by imposing state created duties above and beyond what is already required by the Federal Motor Carrier Safety Administration regulations, 49 C.F.R. § 37.1.[1]  Enforcing such claims would thereby "reshape the level of service a broker must provide in selecting a motor carrier to transport property" which would "have a significant economic impact" on a broker's services.  (Doc. No. 148 at 4 (quoting *Gillum*, 2020 WL 444371, at *5-6 )).  TQL argues that, because negligent brokering claims would impose a patchwork of state-specific duties, it is clearly preempted by the FAAAA.

TQL's position has likewise been adopted by several district courts.  *Gillum*, 2020 WL 444371, at *5 (holding that a negligent brokering claim "directly implicates" how brokers perform its "central function" and are thus preempted); *Krauss v. IRIS USA, Inc.*, No. CV 17-778, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018) ("In essence, the plaintiffs allege that [the broker] should have used a 'heightened and elaborate' process of selecting carriers. Such a heightened process, of course, would 'necessarily impact directly upon [the broker's] services . . . .'" (citations omitted)); *Creagan v. Wal-Mart Transportation, LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018) ("[B]ecause the negligent hiring claim seeks to enforce a duty of care related to how [the broker] arranged for a motor carrier to transport the shipment (the service), the claim falls squarely within

---

[1] These regulations set forth the minimum standards for those involved with the operation of commercial motor vehicles in interstate commerce.

7

the preemption of the FAAAA."); *Volkova v. C.H. Robinson Co.*, No. 16-C-1883, 2018 WL 741441, at *3 (N.D. Ill. Feb. 7, 2018) ("A straightforward reading of Plaintiff's allegations demonstrates that the negligent hiring claims relate to the core service provided by [the broker]—hiring motor carriers to transport shipments.").

Upon consideration, the Court agrees with TQL that negligent brokering claims have more than a tenuous, remote, or peripheral connection to the services that brokers provide. At base, a negligent brokering claim—unlike a general negligence claim—directly targets the core service of TQL: hiring motor carriers to transport shipments. *See Volkova*, 2018 WL 741441, at *3. Even though negligent brokering claims do not necessarily create rigid regulations for compliance, the enforcement of such claims still holds a broker liable to state created standards of care. As such, the Court agrees that Plaintiffs' negligent brokering claims relate to the services of TQL and falls within the scope of 49 U.S.C. § 14501(c)(1).

### iii. A Negligent Brokering Claim Falls Under the Safety Regulation Exception

Having found that Plaintiffs' claims are "related to" TQL's broker services, the Court must determine whether one of the exceptions to the FAAAA's preemptive scope applies. Plaintiffs argue that their negligent brokering claims fall within the statute's safety regulation exception, which states that the FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). They assert that Missouri common law negligent brokering claims are a part of the state's longstanding safety regulatory authority and that such claims fall within the traditional province of the state's police powers. (Doc. No. 137 at 12-13; Doc. No. 144 at 9-10; Doc. No. 155 at 9-10).

In response, TQL argues that Plaintiffs' reading of the safety exception is too broad. First, TQL argues that the term "regulatory authority" should not be read to encompass a private right

8

of action.  Rather, it alleges that a more natural reading would be to understand "regulatory authority" as meaning statutes and regulations issued by the state.  (Doc. No. 150 at 7 (citing *Huntington Operating Corp. v. Sybonney Exp., Inc.*, No. CIV.A. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010) (holding that the FAAAA's safety exception "is not read to permit a private right of action")).  Second, TQL asserts that even if "regulatory authority" could be read to encompass a private right of action that negligent brokering claims do not arise under a state's regulatory authority "with respect to motor vehicles."  (*Id.* (citing *Creagan*, 354 F. Supp. 3d at 814 ("Because the negligent hiring claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles, I conclude this claim is not within the safety regulatory authority of the state and the exception does not apply.")).

The Court is thus faced with two questions: First, whether common law claims can be understood as an exercise of a state's "safety regulatory authority" and, second, whether a negligent brokering claim is a cause of action "with respect to motor vehicles."  In considering these questions, the Court is guided by the holding of the Supreme Court in *City of Columbus v. Ours Garage and Wrecker Srvc., Inc.*, which held that the safety regulation exception should be broadly construed.  536 U.S. 424, 426 (2002).  In *Ours Garage*, the Supreme Court explained:

> Preemption analysis start[s] with the assumption that the historic police powers of the States were not to be superseded by the [FAAAA] unless that was the clear and manifest purpose of Congress . . . Section 14501(c)(2)(A) seeks to save from preemption state power in a field which the States have traditionally occupied.

536 U.S. at 424.[2]

---

[2] The broad construction of the FAAAA's safety regulation exception has likewise been discussed in the Ninth and Fifth Circuits.  *California Tow Truck Ass'n v. City & Cty. of San Francisco*, 807 F.3d 1008, 1022 (9th Cir. 2015) (holding that "regulations directed at safety in a fairly broad sense are exempt from preemption under the FAAAA's safety exception); *VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006) ("Case law both predating and applying the principles discussed in *Ours Garage* has on the whole given a broad construction to the safety regulation exception.").

9

At the outset, the Court is unpersuaded that a state's "safety regulatory authority" is limited to state-passed regulations or statutes. "Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a critical component of the States' traditional ability to protect the health and safety of their citizens." *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 544 (1992) (Blackmun, J., concurring in part and dissenting in part)). As a result, the Court finds that common law negligent brokering claims exist as "a valid exercise of the state's police power to regulate safety." *Finley v. Dyer*, No. 3:18-CV-78-DMB-JMV, 2018 WL 5284616, at *6 (N.D. Miss. Oct. 24, 2018); *see also Lopez*, 2020 WL 2065624, at *7 (giving a thorough explanation as to why the statutory construction of the FAAAA indicates that "regulatory authority" encompasses common law rights).

The Court further finds that Plaintiffs' negligent brokering claim constitutes an exercise of regulatory authority "with respect to motor vehicles." "The Supreme Court has defined the phrase 'with respect to' as 'concerning.'" *Lopez*, 2020 WL 2065624, at *7 (quoting *Dan's City Used Cars, Inc.*, 569 U.S. at 261). Here, the Court holds that a negligent brokering claim—which seeks damages for personal injury against a broker for negligently placing an unsafe carrier on the highway—"concerns motor vehicles and their safe operation." *Id.*; *see also Finley*, 2018 WL 5284616, at *6. The Court is persuaded that this holding is aligned with the central purpose of the FAAAA, which "was enacted with the primary goal of minimizing economic regulation, not state police power over safety regulation." *Lopez*, 2020 WL 2065624, at *7. As a result, the Court finds that

10

Plaintiffs' negligent brokering claims fall within the scope of the safety regulation exception and, thus, are not preempted by the FAAAA.

### B.  Failure to Establish a Negligent Brokering Claim Under the FMCSA

In its motions to dismiss, TQL further argues that Plaintiffs' negligent brokering claims must be dismissed because their allegations do not state a claim under the Federal Motor Carrier Safety Administration regulations, (hereinafter, "FMCSA"), which set forth the minimum standards for those involved with the operation of commercial motor vehicles in interstate commerce.  (Doc. No. 150 at 10).  Specifically, TQL argues that the FMCSA only requires that a broker arrange for transportation of a shipment by an "authorized motor carrier" and that, here, Plaintiffs have not alleged that TQL selected an unauthorized carrier.

The Court finds TQL's argument premature at this stage.  Setting aside any substantive questions as to the interaction between the FMCSA and Missouri negligence law, the question of whether or not TQL selected an authorized carrier is a question of fact that would be inappropriately decided at the motion to dismiss stage.  Here, Plaintiffs' have alleged that TQL negligently and carelessly brokered the load carried by the truck at the time of the collision to an unsafe company and/or driver. (Doc. No. 122 at 7-8; Doc. No. 127at 8; Doc. No. 140 at 7). Accepting the allegations in the Plaintiffs' complaints as true and drawing all inferences in the Plaintiffs' favor, the Court finds that Plaintiffs have alleged sufficient facts to state a claim of negligent brokering.  *Coons*, 410 F.3d at 1039.  Therefore, the Court will not dismiss Plaintiffs' claims.

### IV.   Conclusion

For the foregoing reasons, the Court finds that Plaintiffs negligent brokering claims are not preempted by the FAAAA and that the Plaintiffs' have alleged sufficient facts to withstand a motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant TQL's motions to dismiss are **DENIED without prejudice.**  (Doc. Nos. 131, 149).

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 5th day of August, 2020.